## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SUSAN WILLIAMS      *

    Plaintiff      *      Civil Action No. 8:13-cv-02514- GJH

v.      *

SILVER SPRING VOLUNTEER FIRE      *
DEPARTMENT
     *
    Defendant
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DEFENDANT'S REPLY TO
### PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Defendant Silver Spring Volunteer Fire Department ("SSFD") by its counsel, Jo Anna Schmidt

and the law firm of Schmidt, Dailey & O'Neill, LLC, pursuant to Fed. R. Civ. P. 56(a) and 56(c) and

Local Rule 105 hereby submits this Reply to Plaintiff's Opposition to Motion for Summary Judgment.

## I.      REPLY TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE.

Plaintiff's Opposition to Defendant's Motion for Summary Judgment[1] is a tangled web of

inadmissible hearsay, unauthenticated and unsworn documents, blanket statements unsupported by any

evidence whatsoever, and the misrepresentation of prior testimony.  As set forth in Defendant's Motion

to Strike, Exhibits 6, 8, 9, 10, 11, 15, 19, 21, 22, 23, and 24 attached to Plaintiff's Opposition to

Defendant's Motion for Summary Judgment are inadmissible and should be stricken by the Court for

various evidentiary reasons.  *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir.

1996) (citing *United States v. Hassan El,* 5 F.3d 726, 731 (4th Cir. 1993)).

---

[1] Plaintiff's Opposition to Defendant's Motion for Summary Judgment will hereinafter be referred to as "Plaintiff's Opposition."

1.      Plaintiff was not an "employee who was paid for her work"[2] with SSFD and her citations do not support such an inference.  There is nothing in William Reindollar's ("Reindollar") testimony that supports Plaintiff's contention that *she* was paid for her volunteer services at SSFD. Moreover, Reindollar's testimony establishes that SSFD did *not* pay its volunteers and that Length of Service Awards Program ("LOSAP") benefits were paid to *qualified volunteers* by Montgomery County, Maryland; *not* SSFD.  To the extent that Plaintiff relies upon Exhibit 21[3], it is not admissible evidence because it has not been authenticated.   A party asserting that there is a genuine issue of fact must support their assertion by: (a) citing to particular materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (b) showing that the materials cited do not establish the presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  The opposing party may object that the material cited is not supported by admissible evidence.  Fed. R. Civ. P. 56(c)(2).  Even if Plaintiff's Ex. 21 were accepted by the Court as admissible evidence, nothing contained therein supports Plaintiff's assertion that *she* was paid for her volunteer services by SSFD.  Moreover, to the extent that Plaintiff relies upon website information purportedly from the Internal Revenue Service (Plaintiff Ex. 24), the information contained therein is neither admissible evidence or relevant.  Plaintiff has not shown by affidavit, declaration, deposition testimony, or by other admissible evidence that *she* qualified for, or received LOSAP benefits, or that such benefits were paid by SSFD.  Therefore, there is no dispute that Plaintiff was *not* paid for her volunteer services at SSFD.

2.      The EEOC's local field office "Determination" in this matter and its "findings" with regard to Plaintiff's Charge of Discrimination does not, and cannot, raise an issue of material fact in

---

[2]  Plaintiff's Opposition at p. 1, ¶ 1.
[3]  Hereinafter, the Exhibits attached to Plaintiff's Opposition will be referred to as "Plaintiff Ex."

dispute. Title VII does not provide for a preliminary review of an EEOC determination of reasonable cause. *Georator Corp. v. EEOC,* 592 F.2d 765, 767 (4th Cir. 1979), citing *EEOC v. General Elec. Co.,* 532 F.2d 359, 370 (4th Cir. 1976). This is because a preliminary determination by the EEOC is without legal effect in and of itself. *Georator,* 592 F.2d at 768-69. Thus, when suit is filed by the charging party, the trial is *de novo* and the EEOC determination is in no way dispositive in the federal trial on the issue of whether discrimination occurred. *Id., see also Plummer v. Western Int'l Hotels Co.,* 656 F.2d 502, 504 (9th Cir. 1981); *Blizard v. Fielding,* 572 F.2d 13, 16 (1st Cir. 1978); *Smith v. Universal Servs.,* 454 F.2d 154, 157 (5th Cir. 1972) (*en banc*); *EEOC v. E.I. DuPont de Nemours & Co.,* 373 F. Supp. 1321, 1338 (D. Del. 1974), *aff'd,* 516 F.2d 1297 (3rd Cir. 1975). Even if the EEOC Determination (Plaintiff Ex. 20) were admissible evidence, the determination is not binding and carries "only as much weight as the trial court ascribe[s] to it." *Id.* at 766. Moreover, prior assumptions, findings, and rulings of Equal Employment Opportunity Commission (EEOC) have no *res judicata* or collateral estoppel effect. *Slate v. Potter,* 459 F. Supp. 2d 423 (M.D.N.C. 2006) *aff'd,* 365 F. App'x 470 (4th Cir. 2010). Therefore, to the extent that Plaintiff relies upon the EEOC Determination (Plaintiff Ex. 20) in an attempt to raise genuine issues of material fact in dispute, she cannot do so.[4]

      3.      There is no evidence that after February 2008 and through July 2008, or at any time, John Thompson ("Thompson") "continued to regularly sexually harass" Plaintiff.[5] Through Plaintiff's deposition testimony, SSFD has established the specific incidents of the alleged harassment by Thompson; namely,

          (a)  The February 2008 the Montgomery County Pipes & Drums fundraiser at McGinty's bar;[6]

---

[4] Plaintiff cites to the EEOC Determination in support of her "statement of material facts in dispute" in ¶¶ 2, 3, 6, 11, 21, 25, 26, and 37.
[5] Plaintiff's Opposition p. 2, ¶¶ 7, 23.
[6] *See* SSFD Memorandum Section II.B.1 and citations therein.

(b) The "more than once and not more than three (3) times" where Thompson allegedly sought her out, sat next to her, and rubbed his leg against her leg during SSFD membership meetings;[7]

(c) The one (1) occasion, where Thompson patted his knee at a membership meeting and said to her "sit here," which she declined;[8]

(d) The June 12, 2008 Board meeting where Thompson allegedly sat on Plaintiff;[9]

(e) The June 2009 membership meeting where Thompson invited the entire membership to meet for a drink at the "Cork Bar" in Ocean City and, allegedly, never averted his eyes from Plaintiff when he spoke;[10]

(f) Following the June 2009 membership meeting, Plaintiff noticed Thompson's vehicle blocking her vehicle in the parking lot and he attempted to talk with her about her Charge Status;[11]

(g) One incident in July 2009 where Plaintiff asked Thompson why he was dressed in uniform and he told her that he "did it for her";[12]

(h) One incident where Thompson allegedly told Plaintiff that she was "beautiful," which she "blew off";[13] and,

(i) The January 2010 membership meeting where Thompson accused Plaintiff of filing a lawsuit against the department.[14]

Plaintiff's conclusion that Thompson's alleged conduct was "regular" or occurred "a lot" is simply her conclusion, which is not supported by the admissible evidence and not sufficient to raise an issue of material fact in dispute.

4.      Plaintiff misstates her own prior sworn statements concerning the incident where Thompson allegedly sat on her.  Plaintiff contends that at the Board Meeting "in July 2008," Thompson was the "Acting Fire Chief."[15] In her Charge of Discrimination, Plaintiff stated that the Board Meeting

---

[7] *See* SSFD Memorandum Section II.B.2 and citations therein.
[8] *See* SSFD Memorandum Section II.B.2 and citations therein.
[9] *See* SSFD Memorandum Section II.B.2 and citations therein.
[10] *See* SSFD Memorandum Section II.B.3 and citations therein.
[11] *See* SSFD Memorandum Section II.B.3 and citations therein.
[12] *See* SSFD Memorandum Section II.B.4 and citations therein.
[13] *See* SSFD Memorandum Section II.B.5 and citations therein.
[14] *See* SSFD Memorandum Section II.B.6 and citations therein.
[15] Plaintiff's Opposition p. 3, ¶ 8.

occurred on *June 12, 2008.*[16]  Moreover, there has been no testimony or other admissible evidence that Thompson was the "Acting Fire Chief" at the time.  In fact, Plaintiff testified that Chief McGary was seated to her left at the time of the incident.[17]  Accordingly, the evidence shows that Chief McGary was present at the Board Meeting; therefore, Thompson would *not* have been the Acting Fire Chief.[18]

     5.       With regard to Plaintiff's claims concerning the alleged *quid pro quo* harassment,[19] the citations do not support her allegations.  Plaintiff contends that Thompson was in a position to accept her Charge Status document; however, the evidence establishes that it was Chief McGary, Blankfeld, Contee, and Myatt who held that responsibility.[20]  Moreover, the evidence establishes that Chief McGary, not Thompson, was responsible for removing Plaintiff from training classes and enacting the Fire Chief's General Order Number 08-04, which created the Tier I/Tier II policy.[21]  There is also no evidence that Plaintiff would have been entitled to, or qualified to teach any classes had she been allowed to enroll in training.  Plaintiff would have had to pass the training class(es), met other qualifications, and been invited to teach such classes.[22]  Therefore, to state that she "lost $40 an hour" when she was not permitted to enroll in CPR Instructor Class is speculative and not supported by the evidence.

     6.       There is no dispute that the Plaintiff complained to Cpt. Howard about Thompson;[23] however, there is no evidence, other than Plaintiff's imagination, that "two counts of conduct unbecoming" was the recommended discipline.[24]  In fact, the MCFRS investigation file shows that the

---

[16] *See* SSFD Ex. 9 attached to SSFD's Memorandum In Support of Motion for Summary Judgment (hereinafter "SSFD Memorandum"). .
[17] Ex. A, Plaintiff's Dep. 129:5-11 (July 29, 2014).
[18] Ex. B, Reindollar Dep. 20:13-17; 25:3-22; 26:1-11; 55:2-13 (July 22, 2014).
[19] Plaintiff's Opposition p. 3-4, ¶ 12.
[20] *See* SSFD's Memorandum Section II.F.1 and citations therein.
[21] *See* SSFD's Memorandum Section II.F.3 and citations therein.
[22] Ex. A, Plaintiff's Dep. 317:19-22; 318:1-6 (July 29, 2014).
[23] *See* SSFD's Memorandum Section II.C and citations therein.
[24] Plaintiff's Opposition p. 4, ¶ 13.

only discipline discussed, and agreed to by Plaintiff, was for Chief McGary to counsel Thompson,[25]

which he did.[26]  Plaintiff's testimony about what *she thought* Sanzenbacher said is hearsay,

inadmissible evidence, and contradicted by other evidence in the record.

7.      Plaintiff's allegations that when she complained "outside of the Department," Chief

McGary told her she "should have kept the matter 'in-house'"[27] is hearsay and not supported by

admissible evidence.

8.      Plaintiff has not produced any admissible evidence that Chief McGary did *not* counsel

Thompson following the MCFRS investigation; therefore, this issue is not dispute.

9.      There is no admissible evidence cited to support Plaintiff's allegation that after July

2008, Thompson continued to make "unwelcome comments" to her.[28]  There is also no evidence to

suggest what "unwelcome comments" Plaintiff is referring to.

10.      There is no admissible evidence, by testimony, affidavit, or otherwise, to support

Plaintiff's assertion that after being counseled, Thompson "continued to regularly harass" her "when

he would work with her and would show up at Station 19, where she was assigned to work."[29]   In fact,

Plaintiff's *never* testified that she and Thompson worked any shifts together or that Thompson showed

up at any shift that she was assigned to.  Her testimony was that "he could;" but she never testified that

he did.[30]  Moreover, Plaintiff was never "assigned to work" at Station 19; she was ordered to perform

her volunteer standby duty at Stations 1 or 16 and she disregarded those orders because she preferred to

be at Station 19.[31]

---

[25] *See* Plaintiff Ex. 4; SSFD Ex. 2, McGary Affidavit ¶ 11.
[26] *See* SSFD's Memorandum Section II.G and citations therein.
[27] Plaintiff's Opposition p. 4, ¶ 14.
[28] Plaintiff's Opposition p. 5, ¶ 21.
[29] Plaintiff's Opposition p. 5, ¶ 22.
[30] Ex. A, Plaintiff's Dep. 274:18-22 (July 29, 2014).
[31] *See* SSFD Ex. 2, McGary Affidavit ¶ 6; *see also* SSFD Memorandum Section II.A.4 and citations therein.

11.     There is no evidence to support Plaintiff's allegation that she "continued to work with and under the supervisory authority of" Thompson.[32]  While Thompson may have been a Duty Officer, there is no evidence that Thompson showed up at any station where Plaintiff was scheduled to perform standbys.  Furthermore, there is no evidence that Plaintiff and Thompson rode together on the ambulance or were ever present at any incident scene when they were both on the same standby shift.[33]

12.     Plaintiff refers the Court to the Temporary and Final Peace Orders issued in the case in order to support her contention that the conduct she "endured" from Thompson was "severe and/or pervasive" and that "a reasonable persons could determine that [Thompson's] sexual harassment was severe and/or pervasive."[34]  The Peace Orders are not admissible or competent evidence to support Plaintiff's contention.  Moreover, the only instances of alleged harassment by Thompson identified in Plaintiff's Petition for Peace Order were: (1) Thompson "angrily and loudly" saying at January 2010 membership meeting "Susan don't you have a lawsuit against Silver Spring"; and, (2) "approximately 4 months ago, [Thompson] approached me no less than 3x after a meeting...."[35]  Furthermore, Plaintiff's continued citation to the EEOC Determination cannot create an issue of material fact in dispute because this case is being heard *de novo*.[36]

13.     Plaintiff contends that she complained to various Board Members and Chief McGary about the "sexual harassment she was experiencing" and that nobody took her complaints seriously.[37]  Plaintiff's testimony concerning who she reported her complaints to and which complaints she reported were, frankly, all over the place.  She had vague recollection of the dates and was even less clear as to the types of complaints she mentioned or discussed.  She could not "pinpoint" conversations because it

---

[32] Plaintiff's Opposition p. 6, ¶ 24.
[33] *See* SSFD Memorandum Section II.F.4 and citations therein.
[34] Plaintiff's Opposition p. 6, ¶¶ 25 and 26.
[35] *See* SSFD Ex. 10; *see also* SSFD Memorandum Section II.B.6 and citations therein.
[36] If Plaintiff's contention were to be accepted then, in all cases where the EEOC made a "no reasonable cause" determination, an employer would presumptively be entitled to summary judgment in their favor.
[37] Plaintiff's Opposition p. 6-7, ¶¶ 30 and 31.

was either "small talk" or talking about "everything" or "long girl talks,"[38] *etc*. In her Answers to Interrogatories,[39] Plaintiff claimed that she reported her complaints to the "Board" but when questioned about it, she stated that she "did not complain to the Board."[40]  She testified that she "may have" mentioned to Heltzel about filing charges against Thompson, but she was not sure.[41]  The evidence in this case establishes that Plaintiff made one (1) complaint about Thompson's alleged sexual harassment and it was made to Cpt. Howard, promptly investigated by MCFRS, and resolved because Plaintiff did not make any further complaints about Thompson harassing her.[42]  Her March 5, 2009 email to Chief McGary did not complain about on-going sexual harassment by Thompson, but rather her being "uncomfortable" with Thompson being assigned to work the day she picked as her standby.[43]

14.      Plaintiff allegations that Myatt told her to "grow up" and "apologize to Thompson"[44] is inadmissible hearsay.  Likewise, Plaintiff's allegation that Myatt and Thompson threatened her with a poor recommendation[45] is inadmissible hearsay.

15.      SSFD denies that it engaged in any "retaliatory acts" against Plaintiff as alleged.[46] SSFD acknowledges that that Chief McGary was made aware of Plaintiff complaint to MCFRS as reflected in Plaintiff Ex. 4.  Furthermore, Chief McGary and the Board were notified by the EEOC that Plaintiff had filed a Charge of Discrimination.

16.      Plaintiff alleges that after her complaint "everything got worse" and that she became a "hot potato that no one wanted to be involved with.[47]  Plaintiff's allegation that "everything got worse"

---

[38] Ex. A, Plaintiff's Dep. 243:19-22; 244:1-22; 245:21-22; 246:1-3 (July 29, 2014).
[39] *See* SSFD Ex. 7, Answer to Interrogatory No. 9 p. 13 and discussed at Ex. 1, Plaintiff's Dep. 242:18-22; 243:7-11 (July 29, 2014).
[40] Ex. A, Plaintiff's Dep. 242:18-22; 243:7-11 (July 29, 2014).
[41] Ex. A, Plaintiff's Dep. 160:4-14 (July 29, 2014).
[42] *See* SSFD Memorandum Sections II.C and II.D and citations therein.
[43] *See* SSFD Memorandum Section II.F.4 and citations therein.
[44] Plaintiff's Opposition p. 7, ¶ 34.
[45] Plaintiff's Opposition p. 8, ¶ 35.
[46] Plaintiff's Opposition p. 8, ¶ 36.
[47] Plaintiff's Opposition p. 8, ¶ 38.

is conclusory and she has failed to cite to any supporting evidence or facts.  Moreover, her contention that she became a "hot potato" was *not* in reference to SSFD, but rather her applications to other volunteer fire departments within Montgomery County.[48]  Moreover, her own testimony establishes that she was accepted for volunteer membership at Takoma Park Volunteer Fire Department and Germantown Volunteer Fire Department, which are both located in Montgomery County, Maryland.[49]

17.     Plaintiff's allegations that Chief McGary "agreed to accept [her] calls from her previous EMT position, to be counted toward receive of charge status" and that Chief McGary initially accepted her paperwork[50] is hearsay and not admissible evidence.  Moreover, Chief McGary's affidavit shows that when Plaintiff first contacted him, he advised her that if she did not have her Charge Status, they would begin the process of check rides to obtain same prior to her actual membership.[51]

18.     There is no dispute that prior to the implementation of Fire Chief's General Order Number 08-04 (effective July 28, 2008), Plaintiff was allowed to enroll in Firefighter I class without Charge Status.[52]  Following the implementation of that policy, Charge Status was a requirement for all members to enroll in training classes.  Furthermore, Plaintiff did *not* testify that Honeywell was enrolled in Firefighter II course without Charge Status at the same time that she sought to do so.  Her *hearsay* testimony was that Honeywell told her that he was never bothered with "any of that stuff" and "[h]e was a Fire Two."[53]  Moreover, Plaintiff attempts to rely upon an undated, unauthentic text message (not produced in discovery), which is purportedly from "Michael Stagnitto" ("Stagnitto")  in order to establish that *he* was allowed to attend Fire Fighter training classes without Charge Status.[54] Because Plaintiff Ex 23 is not admissible evidence, it cannot be used to raise a genuine issue of

---

[48] Ex. A, Plaintiff's Dep. 167:1-18 (July 29, 2014).
[49] Ex. A, Plaintiff's Dep. 164:2-22; 165:1-22; 166:1-22 (July 29, 2014).
[50] Plaintiff's Opposition p. 9, ¶ 41.
[51] *See* SSFD Ex. 2, McGary Affidavit ¶ 6.
[52] *See* SSFD Memorandum Section II.F.2 and citations therein.
[53] Ex. A, Plaintiff's Dep. 126:10-16 (July 29, 2014).
[54] *See* Plaintiff Ex. 23.

material fact.   Therefore, Plaintiff's allegation that she did not need to have Charge Status before enrolling in Firefighter I or II course is not supported by admissible evidence.[55]

19.     Plaintiff alleges that she "was the only member to be pulled from a Firefighter I or II class."[56]  However, that is simply her conclusion as Plaintiff has no personal knowledge as to whether other members of SSFD were denied enrollment in classes or removed.

20.     Plaintiff was never categorized as a "higher Tier member" because she never had Charge Status.[57]  She has not cited to anything other than her unsubstantiated and self-serving testimony to support her contention, which is insufficient to establish a genuine issue of material fact in dispute.

21.     Plaintiff alleges that she was the "only member denied enrollment to a CPR instructor Course."[58]  Plaintiff's citations do not support her contention; rather she testified that *she* was qualified and Chief McGary denied *her*.  There is no evidence that Plaintiff was the "only member" to be denied the class.  Moreover, there is no documentary evidence to support Plaintiff's testimony, although she testified that there was an email to that effect.[59]  In fact, the only e-mail regarding "CPR Instructor" was a March 23, 2011 SSFD E-Alert Posting to the *entire* SSFD membership, stating "CPR Instructors Wanted" and advising that "[if] you're an EMT and have charge status we would like you to become a CPR instructor."[60]  In response to the alert, Plaintiff asked Chief McGary why Charge Status was needed to become an Instructor.[61]  Chief McGary responded that he wanted "people who have gained a level of experience, as charge, teaching the subject material."  There is no evidence that Plaintiff requested to be enrolled in the class or that Chief McGary denied her entrance to the class.  Moreover, as previously discussed, there is no evidence that she would have "been paid $40 per hour."

---

[55] Plaintiff's Opposition p. 9, ¶ 42.
[56] Plaintiff's Opposition p. 9, ¶ 43.
[57] Plaintiff's Opposition p. 9, ¶ 44.
[58] Plaintiff's Opposition p. 9, ¶ 45.
[59] Ex. A, Plaintiff's Dep. 318:7-14 (July 29, 2014).
[60] Ex. C, Email re: "E-Alert New Announcement Posted on SSFD."
[61] Ex. C, Email re: "E-Alert New Announcement Posted on SSFD."

22.     Plaintiff alleges that "Thompson's conduct, which was sexually harassing, is undisputed."[62]  In support of her allegation, she cites to the Position Statement submitted by SSFD's counsel (Plaintiff Ex. 17).  Setting aside the fact that this document is not admissible evidence, it does not support Plaintiff's allegation.  The referenced citation was that it appeared that Thompson's conduct was "motivated not by her sex, but by alcohol" and that Plaintiff's allegations "include the type of boorish conduct that someone who had one too many drinks might engage."[63]  Nowhere does it say that Thompson's conduct was "sexually harassing" and, in fact, states that Plaintiff failed to provide specific examples of the alleged "regular sexual comments" and; therefore, SSFD could not respond to those allegations.[64]  Similarly, in *this* action, Plaintiff has failed to produce any admissible evidence that she was "regularly" subjected to "sexual comments" by Thompson.

## II.     REPLY TO PLAINTIFF'S LAW AND ARGUMENT.

In order to oppose a properly supported motion for summary judgment, a party may not rest on conclusory statements.  Rather, it must provide specific facts, particularly when that party has the burden of proof on an issue.  *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990).  The Court scrutinizes the proffered proof, in the form of admissible evidence, to determine whether a party has met its burden of proof.  *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). A mere *scintilla* of evidence will not suffice.  Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. *Sibley v. Lutheran Hosp. of Maryland, Inc.*, 871 F.2d 479 (4th Cir. 1989).

### A.  Plaintiff Failed to Respond to SSFD's Arguments that her Allegations Regarding the February 7, 2008 Incident, the January 2010 Incident, and her Claim for Quid-Pro-Quo Sexual Harassment were Not Timely Pled or Appropriately Exhausted.

---

[62] Plaintiff's Opposition p. 19, ¶ 47.
[63] *See* Plaintiff Ex. 17, p. 14.
[64] *See* Plaintiff Ex. 17, p. 14.

As argued in Section IV.B of SSFD's Memorandum, the February 7, 2008 Incident, which allegedly occurred at McGinty's bar, and the allegations concerning the January 2010 Incident are untimely. Plaintiff failed to substantively respond to SSFD's arguments. Accordingly, Plaintiff has abandoned her Title VII claims to the extent they rely on such allegations. *Sewell v. Strayer Univ.,* 956 F. Supp. 2d 658, 672 (D. Md. 2013) citing *Ferdinand–Davenport v. Children's Guild,* 742 F. Supp. 2d 772, 777 & 783 (D. Md. 2010).

Furthermore, Plaintiff failed to substantively respond to SSFD's argument that she did not include a claim for *quid-pro-quo* sexual harassment in her EEOC Charge of Discrimination or that such a claim would not have grown out of the EEOC investigation. As these arguments were undisputed, SSFD is entitled to judgment as a matter of law as to Count I of Plaintiff's Complaint.

### B.  Hostile Work Environment Sexual Harassment.

#### 1.  Unwelcomed Conduct Based on Sex.

Plaintiff makes exhaustive efforts to establish the first two (2) elements of a sexual harassment and hostile work environment claim,[65] when SSFD never disputed the same. However, it bears noting that some of her contentions are based on inadmissible hearsay and/or incompetent evidence and her citations do not support the statements contained in her brief.[66]

Specifically, at Plaintiff's Opposition p. 15, she cites to *her* testimony to support the contention that "another member told her 'it sounds like [Deputy Chief Thompson is] stalking you.'" What other people allegedly told Plaintiff is hearsay and not admissible evidence. Furthermore, Plaintiff states that she "testified that Deputy Chief Thompson had harassed another female at a different department...."[67] Plaintiff *never* provided any such testimony; rather, she testified that "they [others] knew about his

---

[65] That she was subjected to unwelcome conduct and the unwelcome conduct was based on sex. *See Vinsin v. Bald Head Inland Mgmt., Inc.,* 259 F.3d 261, 266 (4th Cir. 2001).
[66] *See* Plaintiff's Opposition p. 15.
[67] *See* Plaintiff's Opposition p. 15.

history of, you know, putting the make on other females and just – he – just – he was just, like, gross."[68]  Beyond the fact that Plaintiff was giving testimony based upon rumors and inadmissible hearsay, there is no evidence to support her inaccurate characterization that Thompson "harassed another female."

### 2.  Severe and Pervasive

Even if the question of whether harassment is "severe or pervasive" is a question of fact, summary judgment is *still* appropriate if, accepting all Plaintiff's admissible evidence as true and drawing all inferences in her favor, a jury could *not* reasonably conclude that the conduct was so severe or pervasive as to create an abusive or hostile working environment. *Paroline v. Unisys Corp.,* 879 F.2d 100, 105 (4th Cir. 1989), vacated in part on *en banc* rehearing, 900 F.2d 27 (4th Cir. 1990).  To determine whether the conduct meets this standard, the evidence must be examined from both the subjective and objective perspectives.  Plaintiff "must first demonstrate that the harassment interfered with her ability to perform her work or significantly affected her psychological well-being." *Id.*  The next question is "whether the harassment would interfere with the work performance or significantly affect the psychological well-being of a reasonable person in the plaintiff's position." *Id.*

### (a)  The "Reasonable Person Standard" does not assume that Plaintiff is "reasonable."

In determining whether harassment is sufficiently severe or pervasive to create a hostile environment, the harasser's conduct should be evaluated from the objective standpoint of a "reasonable person."  According to EEOC Policy Guidance Number N-915-050, Title VII does not serve "as a vehicle for vindicating the petty slights suffered by the hypersensitive." *Citing, Zabkowicz v. West Bend Co.,* 589 F. Supp. 780, 784 (E.D. Wis. 1984) and *Ross v. Comsat,* 34 FEP cases 260, 265 (D. Md.

---

[68] Ex. A, Plaintiff's Dep. 225:4-6 (July 29, 2014).

1984), *rev'd on other grounds*, 759 F.2d 355 (4th Cir. 1985). The EEOC Policy Guidance provides an apt and, on point, example:

> Example - Charging Party alleges that her coworker made repeated unwelcome sexual advances toward her. An investigation discloses that the alleged "advances" consisted of invitations to join a group of employees who regularly socialized at dinner after work. The coworker's invitations, viewed in that context and from the perspective of a reasonable person, would not have created a hostile environment and therefore did not constitute sexual harassment.
>
> A "reasonable person" standard also should be applied to be more basic determination of whether challenged conduct is of a sexual nature. Thus, in the above example, a reasonable person would not consider the co-worker's invitations sexual in nature, and on that basis as well no violation would be found.

EEOC Policy Guidance Number N-915-050.[69]

In this case, Plaintiff contends that Thompson "sexually harassed" her at a membership meeting when he made an invitation to the general membership about going out for drinks, or buying the membership a drink at the Cork Bar during the Firemen's Convention.[70]  Likewise, Plaintiff testified that Thompson would stand or sit at meetings and "do the eyeball contact thing."[71]  While Plaintiff interpreted Thompson as speaking to *her*, in accordance with the EEOC's own guidance, a "reasonable person" would not consider these invitations as sexual in nature.

### (b) The items cited by Plaintiff in support of her claim of "severe and pervasive behavior" are not sufficient to withstand summary judgment.

Moreover, as discussed previously, Plaintiff's testimony concerning who she reported her complaints to and which complaints she reported was vague and ambiguous.  She could not "pinpoint" conversations and characterized them as "small talk," or talking about "everything," or "long girl talks."[72]  However, what is certain throughout Plaintiff's rambling testimony, is that she *never* once

---

[69] EEOC Policy Guidance on Current Issues of Sexual Harassment, N-915-050, 2 EEOC Compliance Manual (1990), http://www.eeoc.gov/policy/docs/currentissues.html
[70] Ex. A, Plaintiff's Dep. 212:4019 through 216:1-11; 219:13-16 (July 29, 2014).
[71] Ex. A, Plaintiff's Dep. 381:17-22; 382:1-10 (July 29, 2014).
[72] Ex. A, Plaintiff's Dep. 243:19-22; 244:1-22; 245:21-22; 246:1-3 (July 29, 2014).

sought to bring formal charges against Thompson using SSFD procedures (*i.e.,* filing a Statement of Charges, such as those filed by Reindollar against Thompson).[73]  Apparently, she may have spoken with numerous people about how to go about doing it, but none of these conversations either persuaded her to file charges or to ask that they be filed against Thompson.  In addition, Plaintiff continues to make the conclusory statement that the "sexual harassment was constant,"[74] yet she could only identify a few specific instances,[75] out of which the February 2008 and January 2010 Incidents are time-barred. This is insufficient to establish that the harassment was "severe or pervasive" under the applicable standard of law.  Furthermore, Plaintiff's continuous reference to hearsay testimony[76] as to what others allegedly thought of Thompson or said about him is inadmissible evidence and not sufficient to bar summary judgment.  Finally, Plaintiff takes liberties with her own deposition testimony in order to characterize her interactions (or lack thereof) with Thompson.  For instance:

- Plaintiff claims every time he was able, Thompson would sit next to her and "intentionally caress his leg against her…."[77]  Plaintiff's testimony was that he would, sometimes "nudge" her leg.[78]

- Plaintiff claims that Thompson would "pat his lap" at her.[79]  Her testimony was that he would pat his "knee" or the "seat".[80]

- Plaintiff claims that Thompson made "comments" regarding her physical features. Her testimony was that on one (1) occasion, he told her "she was so beautiful or whatever" and she essentially ignored him.[81]

---

[73] Ex. A, Plaintiff's Dep. 154:1 through 161:22 (July 29, 2014).
[74] Plaintiff's Opposition p. 17.
[75] *See* Section I, ¶ 2 *supra.*
[76] Plaintiff's Opposition p. 18.
[77] Plaintiff's Opposition p. 18.
[78] Ex. A, Plaintiff's Dep. 183:19 through 188:3 (July 29, 2014).
[79] Plaintiff's Opposition p. 18.
[80] Ex. A, Plaintiff's Dep. 202:1 through 205:6 (July 29, 2014).
[81] Ex. A, Plaintiff's Dep. 308:10-17 (July 29, 2014).

- Plaintiff claims that Thompson would "show up at the station where she worked when he was not scheduled."[82]  As previously discussed, there is no evidence by testimony or otherwise that this occurred.[83]

- Plaintiff claims that during the Board Meeting where Thompson bounced on her lap, he was "Acting Fire Chief."[84]  As discussed *supra,* this is simply not true and not supported by the evidence.[85]

- Plaintiff claims that she had to see an EAP counselor to help her deal with the stress;[86] however, she has never produced a copy of any such counseling record, nor was such a record requested by her counsel.  Whether she sought counseling as a result of Thompson is debatable because, she testified that she discussed her father's illness during her one (1) counseling session.[87]

- Plaintiff claims that she sought "leave in order to escape [Thompson's] harassment."[88]  However, the evidence establishes that Plaintiff took a three (3) month leave of absence due to her father's illness.[89]

Even when all of the admissible evidence is viewed in a light most favorable to Plaintiff, she has not sustained her burden of establishing the conduct complained of was so severe or pervasive, such that it created an abusive or hostile working environment.  Accordingly, SSFD is entitled to judgment as a matter of law as to Counts III and IV.

---

[82] Plaintiff's Opposition p. 18.
[83] *See* Section I, ¶ 9, *supra.*
[84] Plaintiff's Opposition p. 18.
[85] *See* Section I, ¶ 4, *supra.*
[86] Plaintiff's Opposition p. 18.
[87] Ex. A, Plaintiff's Dep. 355:4-22; 356:1-20 (July 29, 2014); Ex. D, August 4, 2008 Emails re: 8/4/08 Meeting (identified as Exhibit 15 in Plaintiff's Dep. at 344:6-19 (July 29, 2014)).
[88] Plaintiff's Opposition p. 20.
[89] Ex. A, Plaintiff's Dep. 170:12-22; 171:1-2 (July 29, 2014).

### C. *Quid-Pro-Quo* Sexual Harassment.

As discussed *supra,* Plaintiff's claims for *quid-pro-quo* sexual harassment were not part of her EEOC Charge of Discrimination; therefore, she is barred from making a claim in this action.  This is because prior to pursuing a Title VII claim in federal court, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *See Hentosh v. Old Dominion Univ.,* 13-2037, 2014 WL 4723809 (4th Cir. Sept. 24, 2014), citing *Jones v. Calvert Grp., Ltd.,* 551 F.3d 297, 300 (4th Cir. 2009) (failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim). The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. *King v. Seaboard Coast Line R.R.,* 538 F.2d 581, 583 (4th Cir. 1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the [EEOC] charge itself or developed in the course of a reasonable investigation of that charge' ") (quoting *EEOC v. Gen. Elec.,* 532 F.2d 359, 365 (4th Cir. 1976)); *see also Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir. 2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit.").

Assuming *arguendo* that the Court addresses the merits of her claim, she has failed to establish a *prima facie* case and SSFD is entitled to judgment as a matter of law. Plaintiff contends that she has satisfied the fourth element, a tangible employment action;[90] however, as discussed previously throughout Section I, her factual allegations are not supported by admissible evidence.   Plaintiff's allegation that Thompson threatened her with a poor recommendation is inadmissible hearsay. In addition, the evidence establishes that she *was* accepted as a member of other volunteer fire departments within Montgomery County, Maryland; namely, Germantown Volunteer Fire Department and Takoma Park.[91]  In addition, the uncontroverted evidence establishes that Thompson never

---

[90] Plaintiff's Opposition p. 23.
[91] Ex. A, Plaintiff's Dep. 164:2-22; 165:1-22; 166:1-22 (July 29, 2014).

participated in reviewing any of Plaintiff's Charge Status applications; rather, those reviews were performed by Blankfeld, Myatt, and Contee. [92]  Plaintiff's testimony that Thompson was one (1) of at least eight (8) members of the Charge Status review committee[93] does not rebut or even raise an inference that Thompson had any impute with regard to her Charge Status applications.  Moreover, Plaintiff has failed to present any evidence whatsoever (other than her own opinion) that she was qualified for Charge Status and all of the admissible evidence shows that she *never* met the Charge Status qualifications.[94]  Moreover, there is no evidence to support Plaintiff's allegation that she "lost $40 per hour when she was not permitted to teach a CPR Instructor Class."[95]  Setting aside the fact that she *never* asked to teach a CPR Instructor Class and her request was denied, she has not shown that she was even qualified to teach such a class.[96]  There is also no evidence to support Plaintiff's statement that "no other member" was turned down for "CPR Instructor Class" [97] and that statement in-and-of itself mischaracterizes her own cited deposition testimony.[98]

### D.  Retaliation.

#### (a) *Plaintiff has no admissible evidence that was denied Charge Status in retaliation for a protected activity.*

Plaintiff baldly contends that she was qualified for Charge Status and was denied the same in retaliation.[99]  However, she cites no evidence or deposition testimony in support of her contention and conclusory statements do not satisfy her burden in responding to a motion for summary judgment.  *See*

---

[92] *See* SSFD Memorandum Section F.I and citations therein.
[93] Ex. A, Plaintiff's Dep. 209:13-22; 210:1-11 (July 29, 2014).
[94] *See* SSFV Memorandum Section II.F.1 and citations therein.
[95] Plaintiff's Opposition p. 23.
[96] *See* discussion *supra* at Section I, ¶ 5.
[97] Plaintiff's Opposition p. 23.
[98] Plaintiff testified that she was "not aware of" anyone who was turned down for CPR Instructor Class.  *See* Ex. A, Plaintiff's Dep. 414:7-9 (July 29, 2014).
[99] Plaintiff's Opposition p. 29.

Fed. R. Civ. P. 56; *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 216 (4th Cir. 1987), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53 (1986).

In the context of discrimination cases, speculation and conjecture only raise a "mere possibility of unlawful conduct," which is insufficient to preclude summary judgment.  Rather, Plaintiff is required to provide evidence that establishes a "reasonable probability" in order to support an inference of discrimination. *Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 241–42 (4th Cir. 1982). Speculative assertions that a defendant's motivation was discriminatory are not enough to withstand summary judgment. *Goldberg v. B. Green and Co.,* 836 F.2d 845, 848 (4th Cir. 1988). Moreover, unsupported allegations "do not confer talismanic immunity from Rule 56." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985).

Furthermore, Plaintiff contends that Blankfeld was aware of her engagement in a protected EEO activity, which she presumes caused her to be denied Charge Status;[100] however, she again fails to cite any evidence for her contention.  In fact, Blankfeld provided an affidavit, stating that he had *no* knowledge that Plaintiff filed a complaint of sexual harassment while volunteering at SSFD.[101] Moreover, while Myatt, as a Board Member, was aware of Plaintiff's complaint of sexual harassment shortly after it was made, that knowledge did not influence her decision to deny Plaintiff Charge Status.[102] Myatt's decision to deny Plaintiff Charge Status was based on Plaintiff's performance and her review of Plaintiff's documentation, which showed that Plaintiff did not meet SSFD's standards for Charge Status.[103]  Plaintiff contends that she would not get a fair review of her Charge Status documents because Myatt was against her for making her complaint against Thompson.[104]  Again, she

---

[100] Plaintiff's Opposition p. 30.
[101] SSFD Ex. 3, ¶ 4.
[102] SSFD Ex. 4, ¶ 7.
[103] SSFD Ex. 4, ¶¶ 6, 7.
[104] Plaintiff's Opposition p. 30.

relies upon hearsay (Myatt threatened her with an unfavorable reference). She also now relies upon some other "member" who "commented about Myatt's treatment" of her.[105]   According to Plaintiff's testimony, she could not even identify this "member;" therefore, not only is it hearsay but it is unreliable hearsay.

Plaintiff contends that she did everything she was required to do to obtain Charge Status, including being signed off by Michael Barber.[106]   The evidence establishes that after Plaintiff provided her paperwork, Chief McGary attempted to schedule a meeting with her, Myatt, and himself.[107]   However, other than accusing Chief McGary of retaliation, Plaintiff did not respond to his request for a meeting.[108]

Plaintiff has not shown by any admissible evidence that she ever qualified for Charge Status while a member of SSFD; therefore, she cannot establish that her failure to attain Charge Status was in retaliation for her protected activity.

### (b) *Plaintiff has no evidence that she was removed from Firefighter I training or "demoted" in retaliation for a protected activity.*

Plaintiff also contends that she was removed from Firefighter I course training and demoted to a lower Tier status in retaliation for her protected activity.[109]   Again, she has provided no evidence to support her claims. There is no dispute that prior to the implementation of the Fire Chief's General Order Number 08-04 (effective July 28, 2008), Plaintiff was allowed to enroll in Firefighter I training class on more than one occasion. Plaintiff does not dispute that this new policy had been discussed and planned for months prior to Plaintiff's complaint to Cpt. Howard, BC Davis, and Sanzenbacher.[110]

---

[105] Plaintiff's Opposition p. 30.
[106] Plaintiff's Opposition p. 31 and Plaintiff Ex. 6.
[107] *See* SSFD Ex. 2, McGary Affidavit ¶ 17, attachment K.
[108] *See* SSFD Ex. 2, McGary Affidavit ¶ 18, attachment L.
[109] Plaintiff's Opposition p. 29.
[110] *See* SSFD Ex. 2, McGary Affidavit ¶ 14.

Following the implementation of the new policy, Charge Status was required prior to members enrolling in Firefighter classes. Plaintiff contends that Stagnitto, Ato Awai ("Awai"), and John Mahoney ("Mahoney") did not have Charge Status and were permitted to enroll in the class.[111] In support of her contention, she cites to her Answers to Interrogatories (Plaintiff Ex. 3, p. 8). Her Answers state as follows:

> I was told that [Stagnitto] who does not have charge status but was permitted to attend firefighter class and become firefighter. I was told that [Awai] and [Mahoney] did not have charge status but were permitted to enroll in Firefighter 1 and II courses in 2008.

What others may have "told" Plaintiff is hearsay and not admissible evidence. Moreover, as previously discussed, the unauthentic text message, purportedly from Stagnitto (Plaintiff Ex. 23), is also not admissible evidence. Moreover, even if Awai and Mahoney had been permitted to enroll in Firefighter classes "in 2008" they could have done so, like Plaintiff did, prior to the enactment of Fire Chief's General Order Number 08-04.

### (c) The January 2010 Incident is time-barred and even if it were not, it was not an adverse employment action.

Finally, as discussed previously, Plaintiff's allegations concerning the January 2010 membership meeting are time-barred. Even if the January 2010 Incident was not time-barred, it is not "an adverse employment action" and its occurrence was so far removed from her alleged protected activity that it cannot establish the causal connection required for a *prima facie* case of retaliation. Moreover, Plaintiff attempts to buttress her claims by attaching Plaintiff's Ex. 8, an email purportedly from Adam Kopp, and Plaintiff's Ex. 9, an unsworn and unauthenticated statement purportedly from Bryon Honeywell.

---

[111] Plaintiff's Opposition p. 32.

Pursuant to 28 U.S.C. § 1746, an unsworn statement is admissible at the summary judgment stage *only* if the witness certifies that the unsworn statement is "true under penalty of perjury." *Hill v. Se. Freight Lines, Inc.,* 877 F. Supp. 2d 375, 383-84 (M.D. N.C. 2012), *aff'd* 523 A. App'x 213 (4th Cir. 2013), citing 28 U.S.C. § 1746; *Network Computing Servs. Corp. v. Cisco Sys., Inc.,* 152 Fed. App'x. 317, 321 (4th Cir. 2005); and, *Moore v. Laurens Cnty.,* No. 6:09–CV–03083, 2011 WL 4345883, at *3 n. 3 (D.S.C. Sept. 16, 2011) (noting that "an unsworn affidavit, not accompanied by a statement affirming its authenticity, is not admissible to create an issue of fact"). Because neither exhibit meets the requirements for admissibility, they must be stricken.

### (d) *Plaintiff cannot meet her burden of showing "pretext" because her "evidence" is replete with inadmissible hearsay.*

Plaintiff cites to numerous instances of hearsay evidence in support of claim of pretext.[112] Plaintiff's testimony about what Myatt allegedly told her is inadmissible hearsay. Plaintiff's testimony about what a "Board Member" allegedly told her concerning Reindollar is inadmissible hearsay. What Plaintiff's EAP counselor remarked about Chief McGary is inadmissible hearsay.

Plaintiff simply has not shown any actionable retaliatory acts by SSFD, and inasmuch as SSFD has shown that the acts complained of were based upon legitimate, nondiscriminatory business reasons,[113] Plaintiff has not satisfied her burden of showing pretext.

## III.      CONCLUSION.

For the foregoing reasons, as well as the facts, law and argument set forth in SSFD' Memorandum in Support of Motion for Summary Judgment, SSFD respectfully request that this Honorable Court grant its motion for summary judgment as to the claims alleged in Plaintiff's Complaint.

---

[112] Plaintiff's Opposition pp. 33-34.
[113] *See* SSFD Memorandum Sections IV.E.2 and IV.F.b.2 and citations therein.

October 14, 2014
Date

/s/ Jo Anna Schmidt
Jo Anna Schmidt, Esquire
Danielle E. Marone, Esquire
Schmidt, Dailey & O'Neill, LLC
231 E. Baltimore Street, Suite 1400
Baltimore, Maryland 21201
Phone: (410) 783-1296
Fax: (410) 783-1316
jschmidt@sdolaw.com
dmarone@sdolaw.com

*Attorney for Defendant Silver Spring*
*Volunteer Fire Department*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment was served by electronic transmission, this 14th day of October 2014, on each of the following:

Donna Williams Rucker, Esquire
Mackenzie B. Coy, Esquire
RUCKER & ASSOCIATES, P.C.
888 Sixteenth Street, N.W., Suite 800
Washington, DC 20006
*Attorney for Plaintiff*

/s/ Jo Anna Schmidt