**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **SUSAN WILLIAMS,** | | |
| | * | |
| **Plaintiff,** | | |
| **v.** | * | **Case No.: GJH-13-02514** |
| | | |
| **SILVER SPRING VOLUNTEER FIRE** | * | |
| **DEPARTMENT,** | | |
| | * | |
| **Defendant.** | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This is a sex discrimination and retaliation case brought by Susan Williams ("Williams") against the Silver Spring Volunteer Fire Department ("the Fire Department") for purported violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e *et seq.*, and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't, §§20-601 *et seq.* and the Maryland Human Rights Act ("MHRA"), §§20-001 *et seq*. This Memorandum Opinion and accompanying Order address the Fire Department's Motion for Summary Judgment, ECF No. 16, and its Motion to Strike Certain Exhibits Attached to Williams' Opposition, ECF No. 25. A hearing is not necessary. *See* Loc. R. 105.6 (Md.). For the reasons stated below, the Fire Department's Motion for Summary Judgment is GRANTED, in part, and DENIED, in part. The Fire Department's Motion to Strike is DENIED.

## I.      BACKGROUND

The Fire Department is an organization of volunteer firefighters and emergency medical technicians who, having met the State of Maryland's and Montgomery County's training standards, provide emergency medical, fire, and rescue services to the Silver Spring area. *See*

ECF No. 16-7 at ¶ 2. In October 2007, Williams became a volunteer member of the Fire Department where she performed services as an Emergency Medical Technician ("EMT"). *See* ECF No. 1 at ¶ 18. Williams alleges that as a volunteer EMT, she "received some monetary compensation and received time-based status for each year she worked for [the Fire Department], including monthly monetary awards, Maryland Income Tax credits, Maryland property tax credits, and received a minimum [Length of Service Award Program] payment of $300.00 per year." *Id.* at ¶ 23. Although the parties dispute whether Williams actually received any monetary compensation for her service as a volunteer EMT, including the receipt of any Length of Service awards, it is not disputed that volunteers, like Williams, are eligible to receive certain fringe benefits, such as disability benefits, death benefits, and survivor benefits. *See* ECF No. 22-22.

From the time Williams started volunteering in 2007 through early 2008, Williams claims that she was supervised by Deputy Chief John Thompson ("Thompson"). *Id.* at ¶ 27. While the parties dispute the extent to which Thompson directly supervised Williams, there is at least some evidence that Thompson supervised her work to some degree. *See e.g.*, ECF No. 22-3 at 78:10-80:20; ECF No. 22 at 20-21; ECF No. 16-4 at 5-7. At the heart of Williams' complaint are allegations that Thompson: (1) regularly made sexually suggestive comments to her; (2) touched her inappropriately; (3) engaged in stalker-like behavior; and (4) humiliated, degraded, and retaliated against her for exercising her Title VII rights. Specifically, Williams testified at her deposition about multiple examples of unwelcome sexual advances by Thompson. *See* ECF No. 22-2 at 219:4-12; 394-5-21; 398:6-399:6. For example, Williams described an incident in February 2008 when Thompson "grabbed [her] ass" and rubbed his legs against her. *See* ECF No. 22-1 at 113:8-115:8. Additionally, Williams testified about an incident that occurred on June 12, 2008 during a Fire Department Board meeting when Thompson, in uniform and in the

presence of numerous colleagues, walked over to where Williams was seated and began to straddle her waist and grind his pelvis on her. *See id.* at 130:17-22; 131:1-15; *see also* ECF No. 16-12 at 10-11. Williams also testified about other instances where Thompson engaged in stalker-like behavior by seeking her out at monthly Fire Department membership meetings so that he could sit next to her and rub his legs against her. *See* ECF No. 22-1 at 145:19-148:14. When Williams would move away from Thompson, or otherwise tell him to stop, she testified that Thompson would continue to engage in the unwanted touching. *See id.* at 187:22-19. Williams also testified about how Thompson would make comments about her physical appearance. *See id.* at 194:12-21. Finally, Williams testified about an incident that occurred at a January 4, 2010 monthly membership meeting where Thompson publicly berated her for filing an EEOC complaint. *See* ECF No. 22-1 at 161:6-163:10. This shaming occurred in the presence of Williams' colleagues and persisted despite efforts by Thompson's superiors to stop his verbal attack. *See* ECF No. 22-9; *see also* ECF No. 22-10.

On July 27, 2008, Williams complained to one of her superiors, Captain Howard, about Thompson's conduct. *See* ECF No. 22-2 at 309:16-21. The matter was quickly referred to Battalion Chief Mark Davis, who initiated an internal investigation. *See id.* at 137:15-22; 138:1-17; *see also* ECF No 16-2 at ¶ 10. As a result of the investigation, Thompson was verbally reprimanded by Fire Chief McGary, who also instructed him not to interact with Williams. *See* ECF No. 16-4 at 15-16; *see also* ECF No. 16-7 at ¶ 11. Despite the Fire Department's efforts, however, Thompson continued to make unwelcome remarks to Williams and took hostile actions against her such as purposefully parking his car to block her car in a parking spot. *See* ECF No. 16-13 at 219:18-225:20. When the alleged harassment continued, Williams reported her concerns to members of the Fire Department's Board. *See* ECF No. 22-2 at 243:7-252:20. Despite the

renewed complaints, Williams contends that the harassment continued and the Fire Department did not do anything to stop it. Indeed, the Fire Department continued to assign shifts to Williams that might overlap with Thompson's shifts, despite Fire Chief McGary's instruction to Thompson to not interact with Williams. ECF No. 23-5. Ultimately, Williams filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 7, 2009. *See* ECF No. 16-14. When the harassment allegedly continued, Williams petitioned the District Court of Maryland for Montgomery County for a Peace Order on January 7, 2010, which was granted. *See* ECF No. 16-15; *see also* ECF No. 23-7. Williams also contends that as a result of her decision to complain about Thompson's harassment, she was retaliated against by being reassigned to a lower membership tier at the Fire Department, by being restricted to certain work locations, by being denied training opportunities, and by being verbally attacked by Thompson. *See* ECF No. 1 at ¶¶ 72-78, 81-83; *see also* ECF No. 22 at 28-29.

On May 29, 2013, Williams received the EEOC's Notice of Right to Sue. *See* ECF No. 1 at ¶ 13. On August 28, 2013, Williams filed suit in this Court against the Fire Department claiming that she was the victim of unlawful sex-based discrimination (hostile work environment, *quid pro quo*, and disparate treatment) as well as retaliation for engaging in protected activity. *See id.* The Fire Department has filed a motion for summary judgment and a motion to strike that is currently before the Court. For the reasons discussed more fully below, the motion for summary judgment is granted, in part, and denied, in part, and the motion to strike is denied.

## II.   STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material

fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v.*

*Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient

evidence favoring the non-moving party exists for the trier of fact to return a verdict for that

party. *Anderson*, 477 U.S. at 248-49. However, the nonmoving party "cannot create a genuine

issue of material fact through mere speculation or the building of one inference upon

another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). The Court may only rely on facts

supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative

obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to

trial." *Felty v. Grave–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). When ruling on a

motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

### A.   Preliminary Issues

The Fire Department has raised several preliminary issues that the Court must address

before turning to the substance of its motion for summary judgment. The first issue concerns a

motion to strike filed by the Fire Department that seeks to exclude certain exhibits from the

Court's consideration. *See* ECF No. 25. The second issue concerns whether Williams, a

volunteer firefighter who receives no direct remuneration but who is otherwise entitled to certain

fringe benefits, is a covered "employee" under Title VII. *See* ECF No. 16-4 at 25-27; *see also*

ECF No. 22 at 1-2, 11-13. The third issue concerns the scope of discriminatory conduct that the

Court may consider in evaluating the viability of Williams' claims. *See* ECF No. 16-4 at 27-28; *see also* ECF No. 16-14 at 2.

### 1.    Motion to Strike

The Fire Department has filed a motion to strike Exhibits 6, 8-11, 15, 19, and 21-24 that were attached to Williams' opposition to the Fire Department's motion for summary judgment. *See* ECF No. 25. The Fire Department contends that these exhibits, some of which include e-mails, text messages, and business records, must be struck because they were not "authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." *Id.* at 2. In support of this argument, the Fire Department relies on *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) – a case that was "superseded by an amendment to Rule 56" in 2010. *Wonasue v. Univ. of Maryland Alumni Ass'n*, No. 11-3657, 2013 WL 5719004, at *8 (D. Md. Oct. 17, 2013). Under the amended Fed.R.Civ.P. 56, "facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the new requirement is that the party identifies facts that *could be* put in admissible form." *Wake v. Nat'l R.R. Passenger, Corp.*, No. 12-1510, 2013 WL 5423978, at *1 (D. Md. Sept. 26, 2013) (emphases in original) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. 11-3415, 2013 WL 2919705, at *1 n. 1 (D. Md. June 12, 2013) ("Importantly, 'the objection [now] contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be.'") (citation omitted)). Thus, instead of "a clear, bright-line rule ('all documents must be authenticated')," Rule 56(c)(2) now prescribes a "multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method to doing so at trial." *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 10-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011). Now, when the

opposing party – here, the Fire Department, objects on admissibility grounds, "[t]he burden is on the proponent[,] [Williams] [,] to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed.R.Civ.P. 56, Adv. Cmte. Notes, 2010 Amendments. Here, Williams has satisfied this burden by establishing the admissibility of the disputed exhibits.

First, the Fire Department argues that the exhibits cannot be considered because they cannot be authenticated. *See* ECF No. 25. This argument is unavailing. Fed.R.Evid. 901 states that to properly authenticate a document "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Although not necessarily required, Williams submitted a declaration in response to the Fire Department's motion to strike which indicates that she either has personal knowledge of Exhibits 6, 8-11, 15, 19, and 21-24 or otherwise adequately explains how she became familiar with the documents such that she can introduce them as a witness at trial. Williams' declaration therefore can serve as the basis for introduction of any of her exhibits at the summary judgment stage. *See United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014) (citing *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) (noting "the burden to authenticate under Rule 901 is not high – only a *prima facie* showing is required" and "the proponent need only present evidence sufficient to support a finding that the matter in question is what the proponent claims")); *see also United States v. Patterson*, 277 F.3d 709, 713 (4th Cir. 2002).

Next, the Fire Department argues that Williams' exhibits cannot be considered because they contain hearsay. *See* ECF No. 25 at 2. The Fire Department, however, does not specify which documents or which portions of documents contain inadmissible hearsay. Nor did the Fire Department respond to Williams' arguments raised in opposition to its hearsay objection. In fact,

the Fire Department did not respond to *any* of Williams' arguments raised in her opposition. The Fire Department's vague hearsay objection is therefore not well-taken and will be denied on this basis alone. *See Maltas v. Maltas*, 197 F.Supp.2d 409, 427 (D. Md. 2002) ("It is not the responsibility of the court to sift through the documents to determine exactly what should be excluded, if anything."), *rev'd on other grounds*, 65 F.App'x 917 (4th Cir.2003). In any event, Williams has provided the Court with an adequate basis upon which it can rely when considering the exhibits for summary judgment purposes. For example, Exhibits 6, 10, 11, 15, and 19, produced to Williams by the Fire Department, satisfy the business records exception to the hearsay rule. *See* Fed.R.Evid. 803(6). Exhibits 7 and 21 also satisfy the business record exception. *See id.* Additionally, Exhibits 6, 10, 11, 15, 19, and 21-24 are not being offered for the truth of the matter asserted; rather, they are each being offered for another permissible purpose. *See* Fed.R.Evid. 801(c)(2); *see also* ECF No. 26 at 5-6.  Finally, the Court will also consider Exhibits 8 and 9 under the residual hearsay exception. *See* Fed.R.Evid. 807. For these additional reasons then, the Court will deny the Fire Department's motion to strike.

### 2.    Coverage under Title VII

Turning to the motion for summary judgment, the Fire Department argues, as a threshold matter, that this Court lacks jurisdiction to hear Williams' claims because, as an unpaid volunteer, she is not a covered "employee" under Title VII. *See* ECF No. 16-4 at 25-27. If Williams is not a covered "employee" under Title VII, the Court must dismiss all of her claims.[1]

---

[1] This would include dismissal of Williams' state FEPA claims. FEPA is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII. *See Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (2007). Therefore, for purposes of this memorandum, this Court's analysis of Williams' Title VII claims shall constitute its analysis of her FEPA claims. *See, e.g., Linton v. Johns Hopkins Univ. Applied Physics Lab.*, No. 10-276, 2011 WL 4549177, at *4 (D. Md. Sept. 28, 2011) (applying Title VII case law to pendent FEPA claims).

Title VII defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). Because the statute's tautological definition provides little guidance to courts, the Fourth Circuit has advanced an approach that "analyz[es] the facts of each employment relationship under a standard that incorporates both the common law test derived from principles of agency and the so-called 'economic realities' test." *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981 (4th Cir. 1983). "The common law test primarily considers the importance of the employer's control over the employee." *Evans v. Wilkinson*, 609 F. Supp. 2d 489, 493 (D. Md. 2009) (citing *Cobb v. Sun Papers, Inc.*, 673 F.2d 337 (11th Cir. 1982). However, "[w]here, as here, the case involves a volunteer, the [Fourth Circuit has] emphasized that the primary focus should not be on the employer's control of the individual but rather on whether or not 'as a matter of economic reality [an individual is] dependent upon the business to which they render services.'" *Finkle v. Howard Cnty., Md.*, 12 F.Supp.3d 780, 785 (D. Md. Apr. 10, 2014) (quoting omitted). Of particular importance to this case is the Fourth Circuit's decision in *Haavistola v. Cmty. Fire Co. of Rising Sun*, 6 F.3d 211 (4th Cir. 1993), which dealt with a remarkably similar fact pattern that involved the same question presented here – namely, whether a volunteer firefighter, who receives no direct remuneration but receives certain fringe benefits, is a covered "employee" under Title VII.

In *Haavistola*, the plaintiff was a volunteer at a privately-formed corporation that provided "firefighting, emergency medical/paramedic, and rescue services to Rising Sun, Maryland and the surrounding area." *Id*. at 213. Although she received no direct compensation, the plaintiff "did not affiliate with the company without reward entirely." *Id*. at 221. In particular, as a volunteer, the plaintiff received the following benefits:

> state-funded disability pension, survivors' benefits for dependents;
> scholarships for dependents upon disability or death; bestowal of a

> state flag to family upon death in the line of duty; benefits under the Federal Public Safety Officers' Benefits Act when on duty; group life insurance; tuition reimbursement for courses in emergency medical and fire service techniques; coverage under Maryland's Workers Compensation; tax-exemptions for unreimbursed travel expenses; ability to purchase, without paying extra fees, a special commemorative registration plate for private vehicles; and access to a method by which she may obtain certification as a paramedic.

*Id.* at 221 (internal citations omitted). On a motion for summary judgment, the district court found that these benefits were insufficient, as a matter of law, to make the plaintiff an employee under Title VII. *Id.* The Fourth Circuit, however, reversed, holding that "[b]ecause compensation is not defined by statute or case law, . . . it cannot be found as a matter of law." *Id.* The Fourth Circuit went on to conclude that "[t]he district court must leave to a factfinder the ultimate conclusion whether the benefits represent indirect but significant remuneration as [the plaintiff] contends or inconsequential incidents of an otherwise gratuitous relationship as the [defendant] argues." *Id.* at 221-22.

The facts of *Haavistola* are remarkably similar to those presented in this case. Here, Williams was a volunteer EMT for the Silver Spring Fire Department. Although she has not adduced any evidence to suggest that she was paid a salary or otherwise directly compensated for her work as a volunteer firefighter, Williams has nevertheless demonstrated that, pursuant to the Montgomery County Code § 21-21, she was entitled to various fringe benefits as a result of becoming a volunteer EMT. *See* ECF No. 22-22. For example, upon becoming a volunteer EMT, Williams was immediately eligible for disability, death, and survivor's benefits, provided she met certain requirements. *See id.* at 1-2. Additionally, Williams was eligible to participate in other benefit programs, such as the Montgomery County tuition assistance program, and was also able to receive discounts on transit and recreational facilities. *Id.* at 3. Although Williams

may not have ever actually received disability, death, or survivor's benefits, it does not change the fact that, just like the plaintiff in *Haavistola*, "these insurance-type benefits would have provided her with coverage as soon as she began working" although not technically available until death or injury. *See Haavistola*, 6 F.3d at 221-22 (fringe benefits consisted largely of benefits available upon injury or death). Because this Court is bound by *Haavistola*, it cannot find, as a matter of law, that the "significant remuneration benefits available upon injury or death" Williams would have received as a volunteer EMT are insufficient to bring her under the ambit of Title VII. *Id.* at 222; *see also Finkle*, 12 F.Supp.3d at 785-86 (declining to find, as a matter of law, that plaintiff, a volunteer auxiliary police officer, was not a covered "employee" under Title VII where the plaintiff, although not directly compensated for her work, "would have been entitled to significant remuneration benefits available upon injury or death").

The Court is aware of Judge Titus' decision in *Evans v. Wilkinson*, 609 F. Supp. 2d 489, 493 (D. Md. 2009), which found that a volunteer EMT, who received no salary but did enjoy certain indirect benefits, was not a covered "employee" under Title VII. *Id.* at 497. *Evans*, however, is distinguishable from this case. *Evans* dealt with a volunteer EMT who was eligible, upon meeting certain conditions, to receive benefits as a result of volunteering with the Lexington Park Volunteer Rescue Squad. *Id.* at 496. In particular, the plaintiff was eligible for "(1) a Length of Service Program that provided volunteers who had reached the age of 55 and completed at least 20 years of 'certified active volunteer service' with a monthly payment of $125 for the rest of their life; (2) a first-time homeowner's assistance program that provided eligible volunteers with up to $12,500 toward the purchase of their first home; and (3) a scholarship program for Volunteer Rescue Squad volunteers who satisfied the Length of Service Program requirements." *Finkle*, 12 F.Supp.3d at 785-86 (citing *Evans*, 609 F.Supp.2d at 494-96).

11

In reaching its conclusion that the plaintiff was not a covered "employee," the Court observed that the plaintiff had failed to "adduce[ ] evidence that she actually *received* any of the benefits – or was even eligible for – those benefits." *Evans*, 609 F. Supp.2d at 496 (emphasis in original). The same cannot be said here. Williams, by the very fact that she became a volunteer with the Fire Department, was immediately eligible for and covered by the Fire Department's disability, death, and survivor's benefits. *See* ECF No. 16-17. These types of benefits were not at issue in *Evans* – although they were in *Haavistola*. *Evans* is therefore distinguishable and the Court will follow the Fourth Circuit's pronouncements in *Haavistola*, as it must. Accordingly, the Court will decline the Fire Department's request to dismiss Williams' claims on the basis that she is not a covered "employee" under Title VII.

### 3.      Scope of Discriminatory Conduct

Next, the Fire Department argues that Williams has impermissibly expanded the scope of her sexual harassment claims by including several alleged acts of discrimination that were not included in her initial EEOC charge and are therefore untimely. *See* ECF No. 16-4 at 27-28. Specifically, the Fire Department contends that the February 2008 incident and the January 2010 incident cannot be considered by this Court because the February 2008 incident occurred more than 300 days from the filing of Williams' EEOC charge and the January 2010 incident, which post-dated Williams' EEOC charge, was not included in her administrative filing. *See id*. at 28. When Williams filed her charge with the EEOC, however, she specifically indicated that the discrimination of which she complained was a *continuing violation*. *See* ECF No. 16-14 at 2.

Under the continuing violation theory, "[i]f one act in a continuous history of discriminatory conduct falls within the charge filing period, then acts that are plausibly or sufficiently related to that act, which fall outside the filing period, may be considered for

purposes of liability." *Lewis v. Norfolk S. Corp.*, 271 F.Supp.2d 807, 812 (E.D. Va. 2003). The continuing violation theory applies to hostile work environment claims, which are "composed of a series of separate acts that collectively constitute one unlawful employment practice" and are timely if "an[y] act contributing to the claim occur[red] within the filing period." *Nat'l R.R. Passenger Corp. v. Morgan*, 534 U.S. 101, 117 (2002) ("It does not matter . . . that some of the component acts of the [claim] fall outside the statutory time period."). The acts that occur within the filing period need not, standing alone, constitute a violation of Title VII for the continuing violation doctrine to apply. *See Gilliam v. S. Carolina Dep't Of Juvenile Justice*, 474 F.3d 134, 141 (4th Cir. 2007).

Williams testified that, in January 2010, Thompson stood up at a monthly Fire Department meeting and publicly berated her in the presence of her colleagues about her decision to file a discrimination charge with the EEOC. *See* ECF No. 22-1 at 161:6-163:10. Williams also testified about an incident that occurred in February 2008 when Thompson allegedly "grabbed [her] ass" and touched her leg inappropriately. *See id.* at 111:13-121:16. These two incidents of alleged sexual harassment by Thompson are sufficiently related to allegations of conduct before and after those dates, which accuse Thompson of other unwanted sexual advances towards Williams. Accordingly, the continuing violation doctrine applies and the Court will consider the January 2010 incident and the February 2008 incident when analyzing whether Williams has established viable Title VII claims. *See Gilliam*, 474 F.3d at 141 (concluding that the continuing violation doctrine applied to supervisor reprimands outside the charge filing period, because plaintiff made allegations of similar reprimands occurring within the filing period); *see also Nesbitt v. Univ. of Maryland Med. Sys.*, No. 13-0125, 2013 WL 6490275, at *4 (D. Md. Dec. 6, 2013).

### B.      Sexual Harassment

Turning to the merits of Williams' claims, the Court will first address her sexual harassment claims. Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "Courts have long endorsed and adopted the EEOC's interpretation that sexual harassment is a form of prohibited sex discrimination." *Bruce v. Fair Collections & Outsourcing, Inc.*, No. 13-3200, 2014 WL 3052477, at *3 (D. Md. June 30, 2014) (citing *Merit or Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65-66 (1986)).   Actionable workplace sexual harassment claims come in two forms: (1) claims of  a hostile work environment due  to severe or pervasive sexual  harassment  and  (2)  claims of *quid pro quo*  sexual  harassment. *See Fitter v. Cmty. Imaging Partners, Inc.,* 735 F.Supp.2d 379, 390 (D.Md.2010). Williams asserts both types of claims.

### 1.      Hostile Work environment

"To establish a Title VII claim for sexual harassment in the workplace, a female plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). The Fire Department argues that Thompson's conduct was not sufficiently severe or pervasive to create an abusive work environment, and, even if it were, that the conduct was not imputable to the Fire Department. *See* ECF No. 22-4 at 29-35.

a.      **Severe or Pervasive**

To determine if conduct is sufficiently severe or pervasive, the Court must consider: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 242 (4th Cir. 2000). The conduct must be both subjectively and objectively offensive in order to be cognizable under Title VII. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). Naturally, courts often assume the conduct is subjectively offensive. *See Ziskie v. Mineta*, 547 F.3d 220, 227 (4th Cir. 2008). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 23). "Summary judgment should not be granted unless no fact finder reasonably could conclude that the conduct was so severe or pervasive as to create an abusive [] environment." *Williams v. Poretsky Mgmt., Inc.*, 955 F. Supp. 490, 497 (D. Md. 1996). Here, a reasonable juror could conclude that Thompson's conduct was so severe or pervasive that it created an abusive environment.

Williams testified at her deposition about multiple examples of unwelcome sexual advances by Thompson. *See* ECF No. 22-2 at 219:4-12; 394-5-21; 398:6-399:6. For example, Williams described an incident in February 2008 when Thompson "grabbed [her] ass." *See* ECF No. 22-1 at 113:8-115:8. Williams testified that later that evening, Thompson approached her as she was seated alone on a bench, sat next to her, and then proceeded to rub his leg against hers. *See id.* at 114:7-22. Williams also testified about an incident that occurred on June 12, 2008 during a Fire Department Board meeting when Thompson, while in uniform and in the presence

of numerous colleagues, walked over to where Williams was seated and began to straddle her waist and grind his pelvis on her. *See id.* at 130:17-22; 131:1-15; *see also* ECF No. 16-12 at 10-11. According to Williams, she was so "mortified" by Thompson's conduct that she "shoved him" off her lap and left the meeting. *See id.* 131:3-133. Williams also testified about other instances where Thompson engaged in stalker-like behavior. *See id.* at 194:12-21. Specifically, Williams described how Thompson would seek her out at monthly Fire Department membership meetings and sit next to her, often rubbing his legs against her. *See* ECF No. 22-1 at 145:19-148:14. When Williams would move away from Thompson or otherwise tell him to stop, she testified that Thompson would continue to engage in the unwanted touching. *See id.* at 187:22-19. Additionally, Williams testified about how Thompson would make comments about her physical appearance. *See id.* at 194:12-21. Finally, Williams testified about an incident that occurred at a January 4, 2010 monthly Fire Department membership meeting where Thompson publicly berated her for filing an EEOC complaint. *See* ECF No. 22-1 at 161:6-163:10. This public shaming occurred in the presence of Williams' colleagues and persisted despite efforts by Thompson's superiors to stop his verbal attack. *See* ECF No. 22-9; *see also* ECF No. 22-10. Under these circumstances, a reasonable juror could conclude that Thompson's conduct was so severe or pervasive that it created an abusive environment. *See Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir. 1989) (recognizing that "[w]hether [a plaintiff's] harassment was sufficiently severe or pervasive is quintessentially a question of fact"), *overruled on other grounds*, 900 F.2d 27 (4th Cir. 1990).

But even if Thompson's conduct was not sufficiently pervasive, a reasonable juror could still find Thompson's conduct to be so severe as to create a hostile work environment. In hostile work environment cases, "[t]he behavior need not be *both* severe and pervasive: the more severe

the conduct, the less pervasive the plaintiff need prove that it is." *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 669 (D. Md. 2008) (emphasis in original). Here, a reasonable juror could conclude that whatever is lacking in the pervasiveness of Thompson's actions is made up for by the severity of those acts. *See Rohan v. Networks Presentation LLC*, 192 F.Supp.2d 434, 437-38 (D. Md. 2002) (a single incident of harassment was sufficiently severe, when plaintiff was forced by management to reveal "unusually intimate and personal" details about her life to co-workers). Specifically, the Court believes that a reasonable juror could conclude that Thompson's behavior at the June 12, 2008 Fire Department Board meeting when he straddled and grinded on Williams' lap in the presence of numerous colleagues was so degrading and humiliating that it satisfies the severe or pervasive element of her prima facie case. *See Zidan v. Maryland*, No. 10-1792, 2012 WL 2923150, at *9 (D. Md. July 17, 2012) ("degrading and humiliating conduct can establish severe or pervasive discrimination even if not physically threatening"), *aff'd,* 489 F. App'x 726 (4th Cir. 2012).

Furthermore, the severity of Thompson's conduct is exacerbated by the fact that he was, in some capacity, Williams' supervisor. *See e.g.*, ECF No. 22-3 at 78:10-80:20; ECF No. 22 at 20-21; ECF No. 16-4 at 5-7. Indeed, "[t]he Fourth Circuit has held that a reasonable jury may find harassing behavior by a direct supervisor, who 'has significant authority over the employee on a day-to-day basis and the ability to influence the rest of the employee's career' to be objectively more severe than the same behavior by a 'fellow employee.'" *Emond v. Corr. Med. Servs., Inc.*, No. 10-1680, 2011 WL 2712749, at *7 (D. Md. July 12, 2011) (quoting *EEOC v. Fairbrook Medical Clinic*, 609 F.3d 320, 329 (4th Cir. 2010)). If a jury determined that Thompson exercised "significant authority" over Williams, the severity of his conduct would be increased. *See E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 340 (4th Cir. 2001) (finding that the

"severity of Wheeler's sexual misconduct was compounded by the context in which it took place" – namely that "Wheeler was an adult male in a supervisory position over young women barely half his age").[2]

Finally, the Court's conclusion is further supported by the physical nature of Thompson's conduct. "[W]hen the alleged discrimination includes physical touching the courts have been more reluctant to grant summary judgment." *Brown v. Henderson*, 155 F. Supp. 2d 502, 508 (M.D.N.C. 2000) (citing *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995) (explaining the distinction between cases in which summary judgment is denied and those where it is granted by stating that, "[o]n one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures"). Indeed, "inappropriate physical touching is certainly a strong indicator of a hostile work environment . . . ." *Langley v. Dolgencorp, LLC*, 972 F. Supp. 2d 804, 812 (D.S.C. 2013); *see also Okoli v. City Of Baltimore*, 648 F.3d 216, 221 (4th Cir. 2011) (reversing district court's grant of summary judgment in favor of employer and finding that "repeated propositioning and physical touching" by her supervisor was severe and pervasive harassment). For this additional reason then, a reasonable juror could conclude that Thompson's conduct was so severe or pervasive that it created an abusive environment.

---

[2] For this reason, the Court is not persuaded by the Fire Department's reliance on *Hartsell v. Duplex Products, Inc.,* 123 F.3d 766 (4th Cir. 1997), which did not involve sexual harassment by the employee's supervisor. *See* ECF No. 16-4 at 31-32. Nor did *Hartsell* involve any allegations of improper touching, as this case does. *See Hartsell*, 123 F.3d at 773 ("There is no allegation that Hartsell was inappropriately touched, propositioned, flirted with, taunted, or even ogled.").

#### b.         Employer Liability

Next, the Fire Department contends that it cannot be held vicariously liable for Thompson's acts pursuant to the affirmative defense set forth by the Supreme Court in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). *See* ECF No. 16-4 at 34-35. To prevail on the *Faragher/Ellerth* affirmative defense, the Fire Department must demonstrate: "(a) that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that [Williams] unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807. Williams has presented facts that give rise to a genuine dispute regarding both central elements of the *Faragher/Ellerth* defense.

Under the first prong, the employer must show that it exercised reasonable care to prevent and correct promptly any harassing behavior. *Id.* The adoption and distribution of an anti-harassment policy provides compelling proof that the company has exercised reasonable care in preventing sexual harassment. *See Barrett v. Applied Radiant Energy Corp.,* 240 F.3d 262, 266 (4th Cir. 2001) (citations omitted). Here, it is undisputed that the Fire Department adopted and distributed an anti-discrimination policy. *See* ECF No. 16-7 at ¶ 5; *see also* ECF No. 16-13 at 76:3-77:1. The mere presence of an anti-discrimination policy, however, does not end the Court's inquiry.  Indeed, if the plaintiff can show that "the employer adopted or administered the policy in bad faith or that the policy was otherwise defective or dysfunctional," the presence of an anti-discrimination policy is no longer compelling proof that the company exercised reasonable care in preventing sexual harassment. *See Taylor v. Ritz Camera Centers, Inc.*, No. 99-3226, 2001 WL 34659521, at *3 (D. Md. Mar. 29, 2001) *aff'd*, 21 F. App'x 160 (4th Cir. 2001) (citing *Barrett*, 240 F.3d at 266). Thus, the existence of "such a policy only insulates an

employer if it effectively was enforcing its policy." *Noel v. United Parcel Serv., Inc.*, No. 13-1138, 2014 WL 4452667, at *10 (D. Md. Sept. 9, 2014) (citing *Matvia v. Bald Head Isl. Mgmt., Inc.*, 259 F.3d 261, 268 (4th Cir. 2001)). Here, a reasonable juror could conclude that the Fire Department was not effectively enforcing its anti-discrimination policy.

While it is true that the Fire Department promptly investigated Thompson's conduct and ultimately issued a verbal reprimand to him (*see* ECF No. 16-4 at 15-16; *see also* ECF No. 16-7 at ¶ 11), there is a genuine question as to whether the Fire Department's response "was reasonably calculated to end the harassment." *Brown v. Perry,* 184 F.3d 388, 396 (4th Cir. 1999) ("[o]nce the employer has notice [of harassment], then it must respond with remedial action reasonably calculated to end the harassment"). Williams testified that, notwithstanding the Fire Department's investigation, Thompson's harassment persisted and that, in her belief, the Fire Department's response was inadequate. *See* ECF No. 22-2 at 243:7-252:20; *see also* ECF No. 23-5. For example, on March 5, 2009 – well after the Fire Department's investigation of Thompson – Williams e-mailed Fire Chief McGary to express her concern that she was "very uncomfortable with [him] assigning D/C John Thompson to work the day that [she had] as [her] standby (and working toward [her] charge status), since [Fire Chief McGary was] aware [she] filed a sexual assault/harassment complaint against [Thompson]." ECF No. 23-5. Fire Chief McGary simply responded, "So noted." *Id.* Although it is unclear from the record whether Fire Chief McGary actually took any corrective measures to assuage Williams' concerns, a reasonable juror could conclude that Fire Chief McGary's lackadaisical response was inadequate given Williams' history with Thompson. The Fire Department therefore cannot rely on the *Faragher/Ellerth* affirmative defense. Even if the Court were to assume that the Fire

Department had satisfied the first prong of the *Faragher/Ellerth* defense, a reasonable juror could conclude that it failed to satisfy the second prong.

To satisfy the second prong of the *Faragher/Ellerth* defense, the Fire Department must demonstrate that Williams unreasonably failed to take advantage of any preventive or corrective opportunities provided. *See Faragher*, 524 U.S. at 807. The Fourth Circuit has "noted that any evidence that the plaintiff failed to utilize the company's complaint procedure 'will normally suffice to satisfy [the company's] burden under'" this element. *Barrett,* 240 F.3d at 267 (quoting *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 182 (4th Cir. 1998)). Here, the Fire Department concedes that Williams actually did "avail[] herself of [the Fire Department's anti-discrimination] policy and [that] an investigation was immediately conducted into her July 27, 2008 allegations." ECF No. 16-4 at 35. Ultimately, the Fire Department disciplined Thompson through a verbal reprimand from Fire Chief McGary, who also instructed Thompson not to interact with Williams. *See* ECF No. 16-4 at 15-16; *see also* ECF No. 16-7 at ¶ 11. When the alleged harassment continued, however, Williams reported her concerns to various members of the Fire Department's Board. *See* ECF No. 22-2 at 243:7-252:20. A reasonable juror could conclude that these complaints – although not made through the formal reporting process – demonstrate that Williams took reasonable steps to prevent the continued harassment, especially when one considers that the Fire Department was already aware of Thompson's harassment of Williams. *See Basil v. Maryland Transp. Auth.*, No. 12-0556, 2014 WL 1622321, at *9 (D. Md. Apr. 23, 2014) (employer-defendant failed to satisfy the *Faragher/Ellerth* defense where the "record contains abundant evidence from which a reasonable finder of fact could determine that the [employer] had notice of sexually inappropriate conduct by Officer Noel toward fellow employees and took no action in response").

2.      *Quid Pro Quo*

Williams has also brought a *quid pro quo* claim against the Fire Department. *See* ECF No. 1 at ¶¶ 87-98. The Fire Department argues that it is entitled to summary judgment on this claim because Williams has failed to exhaust her administrative remedies. *See* ECF No. 16-4 at 27-28. The Court agrees and will therefore grant the Fire Department's motion for summary judgment.

"Before a plaintiff has standing to file suit under Title VII, she must exhaust her administrative remedies by filing a charge with the EEOC." *Davenport v. Maryland*, No. 13-1249, 2014 WL 3887932, at *5 (D. Md. Aug. 6, 2014) (citing *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir.2002)). "Only those discrimination claims stated in the initial charge, those reasonably related to the initial charge, and those developed by reasonable investigation of the initial charge may be maintained in a subsequent Title VII lawsuit." *Id.* (citing *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir.1996)). "When a plaintiff's complaint exceeds this scope, the plaintiff has failed to exhaust her administrative remedies and the Court must dismiss the complaint." *Id.* (citing *Bryant,* 288 F.3d at 133).

"[T]o establish *quid pro quo* liability, a plaintiff must prove that a 'tangible employment action resulted from a refusal to submit to a supervisor's sexual demands.'" *Moser v. MCC Outdoor, L.L.C.*, 256 Fed. App'x. 634, 642 (4th Cir. 2007) (quoting *Ellerth,* 524 U.S. 742, 753 (1998)). While Williams does allege hostile work environment sexual harassment in her EEOC charge, she does not allege *quid pro quo* sexual harassment. *See* ECF No. 16-14. Further, "because *quid pro quo* requires proof of an element that hostile work environment does not (*i.e.* *quid pro quo*), a *quid pro quo claim* is not reasonably related to and does not reasonably follow from an investigation of a charge of hostile work environment." *Davenport*, No. 13-1249, 2014

WL 3887932 (citing *Porch v. American K–9 Interdiction*, LLC, No. 12-690, 2013 WL 4804285, at *7 (E.D. Va. Sept. 6, 2013); *Bolt v. Norfolk S. Corp.*, 22 F.Supp.2d 512, 517 (E.D. Va. 1997)). Accordingly, Williams has failed to exhaust her administrative remedies as it relates to her *quid pro quo* claim and that claim will therefore be dismissed. Further, because Williams *quid pro quo* claim is not reasonably related to her hostile work claim, she cannot rely on the continuing violation doctrine to save her unexhausted claim. *See c.f.  Rivera v. City of New York*, No. 95-3308, 1997 WL 539776, at *3 (S.D.N.Y. Aug. 28, 1997) ("if the first EEOC charge alleges a 'continuing violation' and the conduct alleged in the complaint is of essentially the same type as that underlying the filing, the additional claims in the complaint are reasonably related to the EEOC charge and need not be brought before the agency separately"). But even if the Court considered the substance of Williams' *quid pro quo* claim, it would still fail.

"*Quid pro quo* sexual harassment occurs when an employer conditions, explicitly or implicitly, the receipt of a job benefit or a tangible job detriment on the employee's acceptance or rejection of sexual advances." *Reinhold v. Virginia*, 135 F.3d 920, 931 (4th Cir. 1998), *opinion withdrawn and superseded by* 151 F.3d 172 (4th Cir. 1998) (vacating its earlier judgment in light of *Ellerth*). Here, Williams has not alleged, nor has she adduced any evidence, that Thompson (or anyone else) conditioned the receipt of a job benefit on Williams' acceptance or rejection of his (or anyone else's) sexual advances. At most, Williams argues that she has a valid *quid pro quo* claim because Thompson threatened that "if [Williams] filed a complaint about his harassment, then she would not get a good reference." ECF No. 22 at 23. While perhaps relevant to a retaliation claim, this demand by Thompson is not relevant to a *quid pro quo* claim, which only arises when a "tangible employment action is conditioned on the acceptance of the harassment or sexual favors." *Temple v. Benjamin*, No. 01-720, 2001 WL

826576, at *5 (D. Md. July 19, 2001). A denial of a good reference is simply not a "tangible employment action." *Lewis v. Forest Pharm., Inc.*, 217 F. Supp. 2d 638, 647-48 (D. Md. 2002) ("Inquiry into the tangible nature of the action (when adverse) typically focuses on whether the employee has suffered discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion."). Furthermore, while Thompson may have made unwanted sexual advances towards Williams, there is simply no evidence to support a finding that Thompson ever conditioned, explicitly or implicitly, an employment action on Williams' acceptance or rejection of these advances. For this additional reason then, the Court will grant the Fire Department's motion for summary judgment as to Williams' *quid pro quo* claim.

### C.      Retaliation

Next, Williams asserts a retaliation claim against the Fire Department. *See* ECF No. 1 at ¶¶ 99-114. Title VII prohibits discrimination against an employee in retaliation for the employee's opposing the employer's illegal discrimination practices or participating in Title VII enforcement proceedings. *See* 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, Williams must show that (1) she engaged in a protected activity; (2) the Fire Department took an adverse employment action against her; and (3) there was a causal link between the protected activity and adverse action. *See E.E.O.C v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005); *see also* 42 U.S.C. § 2000e-3(a). Williams has established a *prima facie* case of retaliation.

First, it is undisputed that Williams engaged in protected activity by filing a complaint with the EEOC on April 7, 2009 (*see* ECF No. 16-14), as well by reporting the alleged discrimination to her superiors. *See* ECF No. 22-1 at 136:4-142:5, 155:22-159:5; *see also*

*Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (protected "activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities").

As for the presence of an adverse employment action, Williams contends that she suffered adverse actions when she was "denied Charge status for which she was qualified to receive, [] removed from firefighter one course training, [] required to work with her harasser, [] required to work[] under the supervisory authority of her harasser, [] demoted to a lower Tier status, [and] berated [] during a membership meeting by Deputy Chief Thompson for filing an EEOC charge." ECF No. 22 at 29. Rather than substantively respond to Williams' alleged adverse employment actions, the Fire Department argues that these actions are not "adverse" for purposes of a retaliation claim for the same reasons they are not "adverse" for purposes of Williams' disparate treatment claim. *See* ECF No. 16-4 at 47. The adverse action element of a retaliation claim, however, is different than that of a disparate treatment claim. Whereas for a disparate treatment claim, "[a]n adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of a plaintiff's employment," *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007), for a retaliation claim, a plaintiff need only show that she suffered an action that was "materially adverse," meaning that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Thus, the adverse employment action provision in the retaliation context is less stringent than it is in the disparate treatment context. Indeed, "the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of

employment" (*id*. at 64); rather, it is meant to include acts, that objectively speaking, "'carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects . . . .'" *Fordyce v. Prince George's Cnty. Maryland*, No. 13-0741, 2014 WL 4244331, at *11 (D. Md. Aug. 25, 2014) (quoting *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010)).

Here, a reasonable juror could find that the actions upon which Williams relies might dissuade a reasonable worker from making or supporting a charge of discrimination. As just one example, Williams complains about events that occurred during a monthly Fire Department meeting on January 4, 2010. During that meeting, Thompson publicly berated Williams for filing an EEOC complaint. This public shaming occurred in the presence of Williams' colleagues and persisted despite efforts by Thompson's superiors to stop his verbal attack. *See* ECF No. 22-9; *see also* ECF No. 22-10. Under these circumstances, a reasonable juror could conclude that such aggressive and humiliating behavior carried out by one's supervisor in the presence of numerous colleagues could dissuade a reasonable employee from exercising his or her rights under Title VII. This is not to suggest that all forms of public humiliation carried out by one's supervisor amount to an adverse employment action; but where, as here, the conduct was directly motivated by the plaintiff's decision to exercise her Title VII rights and the purpose of the conduct was to publicly shame the plaintiff for exercising those rights, the Court finds that, at the very least, a jury should determine whether the conduct amounts to an adverse employment action. *See Thorn v. Sebelius*, 766 F. Supp. 2d 585, 601 (D. Md. 2011) *aff'd*, 465 F. App'x 274 (4th Cir. 2012) (recognizing that acts that carry a "significant risk of humiliation" may be considered an adverse employment action in the retaliation context).

Finally, there can be no serious question that there was a causal link between Williams' protected activity and the adverse action that occurred on January 4, 2010. Indeed, Thompson's outburst at the meeting was directly motivated by Williams' filing a complaint with the EEOC. *See* ECF No. 22-9; *see also* ECF No. 22-10. Thus, but for Williams' decision to file a charge with the EEOC, Thompson's challenged actions at the January meeting would not have occurred. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533-34 (2013) (a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," not just a "motivating factor" to establish the causation element of a retaliation claim). The Court will therefore deny the Fire Department's motion for summary judgment as to Williams' retaliation claim under both Title VII and the MHRA. *See Chappell v. S. Md. Hosp.*, 578 A.2d 766 (1990) (because the MHRA tracks the language of Title VII, the same criteria apply in analyzing retaliation claims under either statute).

**D.     Disparate Treatment**

Finally, Count IV of Williams' complaint is a claim for sex-based disparate treatment. The Fire Department has moved for summary judgment on this claim based on the fact that Williams failed to establish a *prima facie* case of sex-based discrimination. *See* ECF No. 16-4 at 42-46. In her opposition to the Fire Department's motion for summary judgment, Williams does not respond to any of the Fire Department's lengthy arguments relating to the deficiencies of her disparate treatment claim. By failing to address in her opposition any of the arguments raised by the Fire Department relating to her disparate treatment claim, Williams appears to have abandoned this claim. *See e.g.*, *Ferdinand–Davenport v. Children's Guild,* 742 F.Supp.2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim."); *Mentch v. Eastern Sav. Bank, FSB,* 949 F.Supp. 1236,

1247 (D.Md.1997) (holding that failure to address defendant's arguments for summary judgment in opposition brief constituted abandonment of the claim); *Johnson v. Nationstar Mortg., LLC*, No. 14-02536, 2014 WL 5377636, at *2, n.2 (D. Md. Oct. 21, 2014) (dismissing claim, in part, because plaintiff failed to respond to defense arguments raised in its motion to dismiss). The Court will therefore grant the Fire Department's motion for summary judgment as to Count IV. Had the Court considered the substance of her disparate treatment claim, it would have suffered the same fate.

A plaintiff may establish a claim for intentional sex-based discrimination using two methods. She may either demonstrate "through direct or circumstantial evidence" that her sex "motivated the employer's adverse employment decision," *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004), or she may "proceed under a 'pretext' framework" – commonly referred to as the *McDonnell Douglas* approach – "under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually pretext for discrimination." *Id.* at 285.

Williams has presented no direct evidence that her adverse employment actions, which included being moved from a Tier I to a Tier II, being restricted to work at Station 1, being denied firefighter training class, and being denied Charge Status, was based on her sex. *See* ECF No. 1 at ¶¶ 128-44; *see also* ECF No. 22 at 29. Absent direct evidence, Williams must prove her case circumstantially using the pretext framework established in *McDonnell Douglas. See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Williams must first demonstrate a *prima facie* case of disparate treatment, which requires her to show that: (1) she is a member of a protected class; (2) she was performing at a level that met her employer's

legitimate expectations at the time of the adverse employment action; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside her protected class more favorably. *See Coleman v. Md. Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010); *Hill,* 354 F.3d at 285.

Williams' disparate treatment claim fails because she has not proffered evidence sufficient to show that she was treated differently from similarly situated male employees. Although courts do not always require comparator evidence, a plaintiff, like Williams, who bases her disparate treatment claim entirely upon a comparison to an employee from outside the protected class "must demonstrate that the comparator was 'similarly situated' in all relevant respects." *Sawyers v. United Parcel Serv.,* 946 F.Supp.2d 432, 442 (D. Md. 2013) *aff'd,* 13-1777, 2014 WL 2809027 (4th Cir. June 23, 2014). "The similarity between comparators . . . must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). Indeed, "[s]uch a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke,* 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992)); *see also Humphries v. CBOCS W., Inc.,* 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel . . . ."); *Lindsey-Grobes v. United Airlines, Inc.*, No. 14-00857, 2014 WL 5298030, at *1 (D. Md. Oct. 14, 2014).

Williams has failed to satisfy this showing as she has not adduced any evidence to substantiate the existence of any similarly situated male firefighters or EMTs. Specifically,

Williams has not identified any comparators by name. Nor has she shown that any comparators were supervised by the same supervisor, subjected to the same performance standards, engaged in the same conduct, or maintained the same job duties and responsibilities. In fact, Williams' only support for this element of the *prima facie* case comes from allegations contained in her complaint which, of course, are not enough to defeat the Fire Department's motion for summary judgment on this claim. *See Payne v. Duracell U.S.A.*, 745 F. Supp. 341, 343 (M.D.N.C. 1990) ("Plaintiff may not rely on the mere allegations in his complaint to defeat this summary judgment motion.") (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir.1989)). Accordingly, Williams has failed to establish a *prima facie* case of sex-based disparate treatment. *See Dones v. Donahoe*, 987 F. Supp. 2d 659, 669 (D. Md. 2013) (plaintiff failed to satisfy fourth element of his disparate treatment claims where he "provided no information as to sex or age of these other postal employees, their supervisors, their job duties, or their physical condition that resulted in them being allowed to use a swivel chair"). The Court will therefore grant the Fire Department's motion for summary judgment as to Williams' disparate treatment claim.

## IV.    CONCLUSION

For the reasons discussed, the Fire Department's motion for summary judgment is GRANTED, in part, and DENIED, in part. Specifically, the Court is granting the Fire Department's motion for summary judgment as to Williams' *quid pro quo* claim (Count I) and her disparate treatment claim (Count IV). The Court is denying the Fire Department's motion as to Williams' hostile work environment claim (Count III) and her retaliation claim (Count II). As it relates to Williams' state law claims, the Court will dismiss them to the extent they are based on theories of sex-based disparate treatment or *quid pro quo* sexual harassment; however, to the

extent these claims are based on theories of hostile work environment or retaliation, they will survive along with Williams' remaining Title VII claims. A separate Order follows.


Dated: <u>January 16, 2015</u>                                    <u>            /S/            </u>
                                                                    George Jarrod Hazel
                                                                    United States District Judge